FILED
United States Court of Appeals
Tenth Circuit

August 9, 2024

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

INFOCISION MANAGEMENT
CORPORATION,

     Plaintiff - Appellant,

v.

JENA GRISWOLD, in her official capacity
as Colorado Secretary of State,

     Defendant - Appellee.

------------------------------

THE NONPROFIT ALLIANCE
FOUNDATION; THE COLORADO
NONPROFIT ASSOCIATION,

     Amici Curiae.

No. 22-1264
(D.C. No. 1:20-CV-00357-WJM-KLM)
(D. Colo.)

_____

ORDER AND JUDGMENT[*]
_____

Before **HARTZ**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

InfoCision Management Corporation ("InfoCision") challenges the

constitutionality of the Colorado Charitable Solicitations Act, Colo. Rev. Stat. § 6-16-

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

101, *et seq*. (the "Act"). In 2019, pursuant to the challenged provisions of the Act, Colorado refused to renew InfoCision's registration due to a 2018 settlement InfoCision had entered with the Federal Trade Commission ("FTC") that included a permanent injunction against deceptive practices in charitable solicitations. After exhausting administrative appeals, InfoCision sued the Colorado Secretary of State, Jena Griswold (the "Secretary"), in the District of Colorado, arguing that the Act violated the First Amendment on its face and as applied. The parties filed cross motions for summary judgment. The district court denied InfoCision's motion and granted the Secretary's. InfoCision appealed.

On appeal, the Secretary argued the case is moot because InfoCision had been permitted to register in Colorado and the challenged restriction no longer applies to InfoCision. After oral argument, we remanded this matter to the district court for the limited purposes of developing the record to the extent necessary to address our mootness-based jurisdictional concerns and deciding, in the first instance, whether this matter is moot. The district court concluded this matter is now moot.

We issued an order for supplemental briefing from both parties addressing what issues, if any, remain before us and, if any such issues remain, how they should be resolved. InfoCision argues in its supplemental briefing that the district court erroneously found this case is moot. In the alternative, InfoCision argues that if this case is moot, we should vacate both the district court's orders and the Secretary's 2019 refusal to renew InfoCision's registration in Colorado. The Secretary responds that the district court correctly held this matter is now moot and vacatur is inappropriate.

2

We hold this case is moot and vacate the district court's orders but decline to vacate the Secretary's denial of InfoCision's registration.

## I.      BACKGROUND

### A.      *Factual History*

The Colorado Charitable Solicitations Act prohibits paid solicitation by any person who "has been enjoined within the immediately preceding five years under the laws of this or any other state or of the United States from engaging in deceptive conduct relating to charitable solicitations." Colo. Rev. Stat. § 6-16-104.6(10). The Act further authorizes the Secretary to "deny, suspend, or revoke the registration of any charitable organization, professional fund-raising consultant, or paid solicitor" that, among other things, "acts or fails to act in such a manner as otherwise to violate any provision of this article." *Id.* § 6-16-111(6)(a).

InfoCision has been a "paid solicitor" as defined under the Act for seventeen years.[1] In January 2018, the FTC filed a complaint against InfoCision in the Northern District of Ohio alleging that, in some of its telemarketing campaigns, InfoCision's telemarketers falsely or misleadingly told consumers the purpose of the calls was not to ask for donations. The parties settled and the Northern District of Ohio entered a "Stipulated Order for Permanent Injunction and Civil Penalty Judgment" (the "stipulated

---

[1] The Act defines a "paid solicitor" as "a person who, for monetary compensation, performs any service in which contributions will be solicited in this state by such compensated person or by any compensated person he or she employs, procures, or engages to solicit for contributions." Colo. Rev. Stat. § 6-16-103(7).

3

injunction"). App. Vol. II at 18–29. Pursuant to the settlement agreement between the

FTC and InfoCision, InfoCision agreed to be

> permanently restrained and enjoined from engaging in, causing others to engage in, or assisting and facilitating others in engaging in, any of the following practices:
>
> A. Making a false or misleading statement to induce any person to pay for goods or services or to induce a Charitable Contribution;
>
> B. In outbound telephone calls to induce a Charitable Contribution, from failing to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:
>
>     1. The identity of the charitable organization on behalf of which the request is being made;
>
>     2. That the purpose of the call is to solicit a Charitable Contribution; and
>
>     3. Whether the requested Charitable Contribution is a donation, a gift of money, or any other thing of value; and
>
> C. Violating the Telemarketing Sales Rule, 16 C.F.R. Part 310 . . . .

*Id.* at 21–22.

In mid-2018, InfoCision applied for the annual renewal of its registration to solicit

charitable contributions in Colorado. In compliance with Colo. Rev. Stat. § 6-16-

104.6(3)(g), InfoCision disclosed the settlement with the FTC. The Secretary denied the

application because the settlement agreement had "enjoined" InfoCision "within the

immediately preceding five years . . . from engaging in deceptive conduct relating to

charitable solicitations" and thus barred registration under Colo. Rev. Stat. § 6-16-

104.6(10).

InfoCision appealed the Secretary's denial of its 2018 renewal application, arguing

that the denial constituted an "unconstitutional restraint on protected speech" and violated

4

its "First and Fourteenth Amendment rights." *Id.* at 3. InfoCision further argued that "the Secretary failed to issue her denial within the statutorily required ten-day period." *Id.* The Secretary then retracted her denial, stating that, "upon further review," the Secretary "ha[d] determined that" InfoCision's registration "was deemed approved on August 9, 2018." *Id.* Because the Secretary's office had missed the ten-day statutory deadline, it determined it must "deem the renewal accepted as filed." *Id.* at 3–4.

The following year, in August 2019, InfoCision submitted its annual application to renew its registration. InfoCision's application again disclosed the settlement agreement with the FTC. Eight days later, the Secretary denied InfoCision's application, citing the stipulated injunction and stating that InfoCision was statutorily barred from soliciting for a period of five years under Colo. Rev. Stat. § 6-16-104.6(10). InfoCision appealed the denial, and the Secretary issued her Notice of Duty to Answer, Notice of Hearing, and Notice of Charges on August 20, 2019. InfoCision filed its Answer, Affirmative Defenses, and Counterclaim, which included constitutional claims and defenses. The Secretary moved to dismiss InfoCision's counterclaim and constitutional defenses, and the Colorado Department of State granted that motion at an administrative hearing held in October 2019. The Hearing Officer declined to reach the merits of InfoCision's constitutional claims because the Hearing Officer determined that, under Colorado law, "an administrative agency, such as the Department of State, has no jurisdiction to pass on constitutional challenges to statutes the agency administers." *Id.* at 5. The Hearing Officer then affirmed the Secretary's denial of InfoCision's application. InfoCision

5

appealed, but in January 2020, the Deputy Secretary of State issued the agency's final order affirming the denial.

No other state has denied InfoCision's professional fundraiser registration on the basis of the stipulated injunction. In addition, in 2023, InfoCision successfully re-registered as a paid charitable solicitor in Colorado.[2]

### B.    Procedural History

InfoCision filed suit in the District of Colorado, bringing four First Amendment claims pursuant to 42 U.S.C. § 1983. First, InfoCision claimed Colo. Rev. Stat § 6-16-104.6(10) was unconstitutional on its face and as applied because it is a prior restraint and discriminates against disfavored professional solicitors and their clients. Second, InfoCision claimed the Act unconstitutionally gave unbridled discretion to government officials to grant or deny permission to speak by saying the Secretary "may" deny, suspend, or revoke a registration—alleging the Secretary admits she has treated registrants disparately in the past—and by allowing unreasonable delay in denial, suspension, or revocation of licenses. Third, InfoCision claimed the ban violated Article II, § 10 of the Colorado Constitution prohibiting laws that impair free speech. Finally, InfoCision claimed a violation of the Colorado Administrative Procedure Act ("APA") forbidding agency action that is contrary to constitutional rights or that abuses its discretion. As relief, InfoCision sought:

---

[2] In 2024, after this case was remanded to the district court, it appears InfoCision was once again permitted to complete its annual registration in Colorado.

6

- "A stay of enforcement of the unconstitutional statute as applied to InfoCision to ban its prospective fully protected speech in Colorado pending judicial review," App. Vol. I at 27;

- "A permanent injunction enjoining the enforcement of the provisions granting unbridled discretion to the Secretary of State, her agents, and employees, and establishing an unconstitutional prior restraint on the protected charitable speech of InfoCision, its agents, employees, and others similarly situated," *id.*;

- "A declaration that the challenged statutory provisions granting unbridled discretion and creating an unconstitutional prior restraint that chills protected speech on their face violate the First and Fourteenth Amendments to the United States Constitution and Article II, § 10 of the Colorado Constitution," *id.*;

- "A declaration that the challenged statutory provisions as applied to InfoCision violate the First and Fourteenth Amendments to the United States Constitution and Article II, § 10 of the Colorado Constitution," *id.*;

- "A declaration that the Secretary of State has violated InfoCision's constitutional rights and, as a result, that InfoCision has been damaged," *id.*; and

- Costs, interest, and attorney's fees, and any other relief as the court deems just and proper.

InfoCision and the Secretary both moved for summary judgment. Consistent with its complaint, InfoCision argued the Act was unconstitutional on its face and as applied, and that the Secretary violated the Colorado Constitution and the Colorado APA. The

Secretary argued the Act was content-neutral and therefore subject only to intermediate scrutiny; was not overbroad; and did not grant unbridled discretion or lack procedural safeguards. The Secretary also contended InfoCision's state law claims were barred by the Eleventh Amendment. The district court denied InfoCision's summary judgment motion and granted the Secretary's motion in full.

InfoCision then moved to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) based on a District of Connecticut case, *Kissel v. Seagull*, 552 F. Supp. 3d 277 (D. Conn. 2021) (considering the constitutionality of state requirements for charitable solicitors in the context of a preliminary injunction). The district court denied the motion on the basis that *Kissel* was not binding.

InfoCision timely appealed. On appeal, InfoCision argued that the district court erred in its evaluation of the First Amendment claims. A panel of this court heard oral argument on May 17, 2023. Because questions remained concerning our jurisdiction under Article III of the Constitution, on July 5, 2023, we ordered the parties to file supplemental briefs addressing questions on the issue of mootness. We directed the parties to answer the following questions:

1)    What, if any, are the collateral consequences of past enforcement of Colo. Rev. Stat. § 6-16-104.6(10) against InfoCision?

2)    For each remedy listed in InfoCision's prayer for relief, what practical effect might such a remedy have?

10th Cir. Order for Supp. Briefing at 4. Following the parties' supplemental briefing, we remanded this matter to the district court for the limited purposes of developing the

record to the extent necessary to address our mootness-based jurisdictional concerns and deciding, in the first instance, whether this matter is moot.

On May 14, 2024, after allowing the parties to engage in limited discovery and ordering the parties to file briefs on the issue of mootness, the district court issued an order concluding this matter is now moot. The district court examined the injunction and declaratory relief InfoCision sought and concluded that relief would not redress any injury to InfoCision because InfoCision has been permitted to re-register in Colorado and the Secretary has explained InfoCision will not be subject to further bans based on the previous injunction. The district court further concluded that InfoCision's facial challenges to the Act were moot because InfoCision lacks a redressable injury, as the Secretary has already registered InfoCision as a charitable solicitor in Colorado.

The district court then considered the collateral consequences exception to mootness. Although InfoCision asserted that its 2019 denial in Colorado would have the collateral consequence of requiring Mississippi to deny InfoCision's registration, the district court found based on additional facts developed on remand, and specifically the deposition testimony of the Assistant Secretary of State for the Charities Division in Mississippi, that Mississippi would *not* be required to deny InfoCision's registration now that InfoCision has registered as an agent in Colorado. The court further explained that InfoCision has not presented evidence that another state is considering revoking or denying its registration based on Colorado's previous denial. The court also concluded the voluntary cessation and capable of repetition yet avoiding review exceptions do not apply to this case. Finally, the district court left to this court the question of whether to

vacate its previously issued Order on Cross Motions for Summary Judgment and the Secretary's denial of InfoCision's registration.

We issued an order for supplemental briefing from both parties addressing what issues, if any, remain before us and, if any such issues remain, how they should be resolved. InfoCision asserts in its supplemental brief that the district court erred in holding this case is moot. In the alternative, InfoCision argues that we should vacate the district court's orders and the Secretary's denial of its 2019 registration. The Secretary filed a responding supplemental brief, arguing that this case is moot and that vacatur of the district court's orders and the Secretary's denial would be improper.

## II.       DISCUSSION

We hold that InfoCision's case is moot.[3] We further vacate the district court's Order on Cross Motions for Summary Judgment and its Order Denying Plaintiff's Opposed Motion to Alter or Amend the Court's Judgment, but we decline to vacate the Secretary's denial of InfoCision's 2019 registration.

---

[3] On February 1, 2023, InfoCision filed a motion to supplement the record with declarations in support of its response to the Secretary's claim of mootness. InfoCision's motion predates our order for supplemental briefing on the issue of mootness, our order remanding this matter to the district court, the parties' limited discovery before the district court and briefing on the issue of mootness, and the district court's subsequent determination that this matter is moot. We now review the district court order deciding, in the first instance, that this case is moot. Given the posture of this case, we dismiss InfoCision's February 2023 motion to supplement the record as moot.

### A.    Mootness

**1.    Standard of Review**

"We review mootness de novo as a legal question." *Keller Tank Servs. II, Inc. v. Comm'r of Internal Revenue*, 854 F.3d 1178, 1193 (10th Cir. 2017); *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1122 (10th Cir. 2010) ("Our review of [the question of constitutional mootness] is de novo." (quotation marks omitted)). However, when we review a "district court's dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)," we "review findings of jurisdictional facts for clear error." *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001); *Hennessey v. Univ. of Kan. Hosp. Auth.*, 53 F.4th 516, 527 (10th Cir. 2022) ("Specific to a dismissal for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), we review the dismissal de novo but review any factual findings underlying the dismissal for clear error."). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Rio Grande Silvery Minnow (Hybognathus amarus) v. Bureau of Reclamation*, 599 F.3d 1165, 1175 (10th Cir. 2010) (quotation marks omitted).

Although the district court in this case did not dismiss this case as moot pursuant to a Rule 12(b)(1) motion, we are similarly reviewing the district court's determination that this case is moot pursuant to our order that the district court engage in fact finding related to our jurisdictional questions. We therefore adopt this same standard of review

and review the legal question of mootness de novo but review the district court's factual findings for clear error.

## 2.    Legal Standard

Article III of the Constitution permits federal courts to decide only "Cases" or "Controversies." U.S. Const. art. III, § 2, cl. 1. This requires "a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." *Carney v. Adams*, 592 U.S. 53, 58 (2020). The doctrine of mootness aims to ensure federal courts stay within Article III's bounds throughout the litigation. *Brown v. Buhman*, 822 F.3d 1151, 1163 (10th Cir. 2016) (explaining that mootness ensures a plaintiff's action remains a case or controversy at the time a court renders its decision).

"In deciding whether a case is moot, the crucial question is whether granting a present determination of the issues offered will have some effect in the real world." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1165 (10th Cir. 2023) (internal quotation marks, brackets, and ellipsis omitted). Thus, "a case becomes moot when a plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision." *Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015) (internal quotation marks omitted); *Rio Grande Found.*, 57 F.4th at 1165 ("When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot." (quotation marks omitted)). We evaluate mootness as to each form of relief requested. *Prison Legal News v. Fed. Bureau of Prisons*, 944 F.3d 868, 880 (10th Cir. 2019).

While the party invoking federal jurisdiction "bears the burden of establishing standing as of the time it brought [the] lawsuit and maintaining it thereafter," *Carney*, 592

12

U.S. at 59, "[t]he 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness," *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (alterations in original) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). Further, we will not dismiss an otherwise moot case if one of several doctrines applies. *See Ind*, 801 F.3d at 1213 (describing the four circumstances in which a court will not dismiss an otherwise moot case as moot). Two such exceptions are relevant here: collateral consequences and capable of repetition yet evading review.

### a.      Collateral Consequences

The collateral consequences doctrine recognizes that "a judgment may carry indirect consequences in addition to its direct force, either as a matter of legal rules or as a matter of practical effect." 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure Jurisdiction § 3533.3.1 (3d ed. 2008). "[A] case is not moot if there remains a secondary or collateral injury despite the resolution of a plaintiff's primary claim." *Kan. Jud. Rev. v. Stout*, 562 F.3d 1240, 1248 (10th Cir. 2009).

Collateral consequences need not be certain to preclude mootness. *Friends of the Earth, Inc.*, 528 U.S. at 170 (explaining that possible harm "may be too speculative to support standing, but not too speculative to overcome mootness"). Consequences that are entirely speculative and hypothetical, however, do not defeat mootness. *See, e.g.*, *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1115 (10th Cir. 2016) ("Concerns over the preclusive effect of an adverse judgment or other matters relating to a hypothetical unfiled suit are not cognizable reasons for continuing litigation that is otherwise moot."). Thus, mootness

13

applies "if no consequences can be foreseen *or if foreseeable possible consequences seem remote.*" *Kan. Jud. Rev.*, 562 F.3d at 1248 (quoting Wright, Miller & Cooper, *supra*, § 3533.3.1). The party asserting collateral consequences of an otherwise moot claim bears the burden to show such consequences. *See id.*

  b.    *Capable of Repetition Yet Evading Review*

An exception to mootness for conduct that is capable of repetition yet evading review applies when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Brown*, 822 F.3d at 1166 (quotation marks omitted). This exception is a "narrow one," *Jordan v. Sosa*, 654 F.3d 1012, 1034 (10th Cir. 2011) (internal quotation marks omitted), which we "reserve for exceptional situations," *Robert v. Austin*, 72 F.4th 1160, 1164 (10th Cir. 2023) (quotation marks omitted), *cert. denied*, 144 S. Ct. 573 (2024). The party asserting this exception to mootness "bears the burden of establishing *both* elements of this two-prong test." *Jordan*, 654 F.3d at 1035.

**3.    Analysis**

  a.    *Declaratory and Injunctive Relief – As Applied Challenge*

InfoCision requests that we stay enforcement of the Act as applied to InfoCision, permanently enjoin the enforcement of the challenged statutory provisions, declare the challenged provisions as applied to InfoCision unconstitutional, and declare that the Secretary has violated InfoCision's constitutional rights, causing InfoCision to be damaged. Because the requested relief "will [not] have some effect in the real world," *Rio*

14

*Grande Found.*, 57 F.4th at 1165 (quotation marks omitted), InfoCision's as applied challenge is moot.

It is undisputed that InfoCision has successfully re-registered as a paid charitable solicitor in Colorado. Ordering the Secretary to register InfoCision is thus pointless. *See S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 728 (10th Cir. 1997) ("There is no point in ordering an action that has already taken place.").

Similarly, a declaration that the challenged statutory provisions, as applied to InfoCision, are unconstitutional or that the Secretary's previous denial of InfoCision's registration was unconstitutional would not redress any injury to InfoCision because it would not alter the Secretary's conduct toward InfoCision. *See Jordan*, 654 F.3d at 1025 ("[W]here a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed in his complaint."). InfoCision invokes the permanence of the stipulated injunction, suggesting that it will *always* be prohibited from paid solicitation under the Act because it will always "ha[ve] been enjoined within the immediately preceding five years . . . from engaging in deceptive conduct relating to charitable solicitations."[4] Colo. Rev. Stat. § 6-16-104.6(10). But per the Secretary, this five-year clock begins at the time the injunction is entered, and "[t]he plain text of the Act does not authorize the Secretary to take any action after the five-year period following the injunction has expired." Appellee's Supp.

---

[4] InfoCision raises this argument in the context of its facial challenge to the Act in passing. Given that this argument relates to the statute as applied to InfoCision, however, we address it here rather than in the context of InfoCision's facial challenge.

Br. at 4. Given that the Secretary has already approved InfoCision's registration, despite the ongoing existence of the permanent injunction, and has expressed her belief that she *cannot* deny InfoCision's registration again based on that same stipulated injunction, any potential injury stemming from her decision to re-ban InfoCision due to the stipulated injunction is pure speculation on the part of InfoCision.

For the foregoing reasons, none of the relief InfoCision seeks with respect to its as applied challenge to the statute will redress any injury to InfoCision. Thus, these claims are moot.

b.        *Declaratory and Injunctive Relief – Facial Challenge*

InfoCision's request for injunctive and declaratory relief in relation to its facial challenges are similarly moot because InfoCision has no injury to redress. While InfoCision argues "[t]he deprivation of First Amendment rights, for any length of time, constitutes redressable injury for both declaratory and injunctive relief," Supp. Reply at 2, any such injury in this case is no longer redressable because the alleged First Amendment deprivation has been stopped and none of the relief sought will provide any retrospective relief.

As an initial matter, InfoCision argues that a facial challenge turning on the constitutionality of an unchanged statute cannot be mooted by intervening events, citing to our unpublished case in *Denver Bible Church v. Polis*, No. 20-1391, 2022 WL 200661, at *7 (10th Cir. Jan. 24, 2022). As an initial matter, the case is unpublished, and thus is not binding on this court. 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). Further, we did not engage in

16

a detailed analysis of the mootness issue in that case, and certainly did not hold that a facial challenge to a statute survives even if the plaintiff no longer suffers a redressable injury. *See Denver Bible Church*, 2022 WL 200661, at *7. Contrary to InfoCision's assertions, InfoCision must still suffer from an injury that can be redressed in order to sustain its facial challenge. We have explained in the standing context that a plaintiff must meet the ordinary requirements for standing to bring a facial challenge. *E.g.*, *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1228 (10th Cir. 2005) ("Although failure to apply for a license does not serve as a barrier to the facial challenge of an ordinance, plaintiffs must nonetheless meet the ordinary requirements for standing."). "[A]lthough the comparison [between standing and mootness] is not a perfect one, with rare exceptions [t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Rio Grande Found.*, 57 F.4th at 1165 (third alteration in original) (internal quotation marks omitted). As a result, our precedent makes clear that a facial challenge to a statute *can* be rendered moot when the party challenging the statute no longer has an injury that can be redressed by the requested relief, even if the statute remains the same. *See, e.g.*, *Jordan*, 654 F.3d at 1030 (holding that the plaintiff's "facial and as-applied challenges to the Ensign Amendment, as it is embodied in the BOP's implementing regulation, are constitutionally moot" due to the plaintiff's changed circumstances); *Rio Grande Found.*, 57 F.4th at 1165–67 (concluding a charitable organization's facial challenge to New Mexico state electioneering rules was moot following the passing of the November 2020 election

"because invalidating the disclosure requirement would not affect [the charitable organization]").

Upon review of InfoCision's alleged redressable injuries, we conclude neither injunctive nor declaratory relief will provide redress to any injury. First, InfoCision argues the challenged provisions, Colo. Rev. Stat. §§ 6-16-104.6(10) and 6-16-111(6)(a), continue to apply to InfoCision and other registered paid solicitors. Per InfoCision, the law "has injured [InfoCision], continues to regulate it, and threatens repeated injury." Appellant's Supp. Br. at 4. InfoCision similarly asserts "a declaration that the enforcement provision of the Act, [§] 6-16-111(6)(a), is facially unconstitutional would cure the grant of excessive discretion to the Secretary in granting or denying licenses to speak." *Id.* at 2. But the mere existence of an allegedly unconstitutional statute does not, without more, constitute an injury. *See Dr. John's, Inc. v. City of Roy*, 465 F.3d 1150, 1155–56 (10th Cir. 2006) ("An injury in fact does not automatically occur by [t]he mere presence on the statute books of an unconstitutional statute . . . , even if [plaintiffs] allege an inhibiting effect on constitutionally protected conduct prohibited by the statute." (internal quotation marks omitted)). Further, while InfoCision invokes potential future injury to other speakers, that potential injury is equally hypothetical and does not alter the fact that *InfoCision* no longer has a redressable injury.

InfoCision also asserts the challenged statutory provisions act as a prior restraint because they deter InfoCision from entering settlement agreements due to the threat of a ban in Colorado, and the requested relief will prevent future injury to InfoCision and encourage the efficient settlement of disputes. This too is a purely speculative injury.

18

InfoCision asks that we assume the FTC or some other entity will once again file a complaint against InfoCision and that the enforcement proceedings will once again result in a disposition that triggers Colorado's five-year ban. The hypothetical series of events that must take place for InfoCision to suffer the injury it alleges renders this injury entirely speculative.

Finally, InfoCision argues that a declaration of the Act's unconstitutionality would "inform the other 40 states licensing this same speech activity that InfoCision's denial falls because it issued pursuant to an unconstitutional statute." Appellant's Supp. Br. at 2. But InfoCision's invocation of other licensing states is not convincing, as the fact that the relief InfoCision seeks "might guide third parties (i.e., those not parties to the lawsuit) in their future interactions with a plaintiff is insufficient [to overcome mootness]." *Jordan*, 654 F.3d at 1026 (emphasis omitted).

For the foregoing reasons, this court cannot redress any injury in granting the relief InfoCision seeks. The Secretary has carried her burden and demonstrated that InfoCision's facial challenge is moot.

### c.    Attorney's Fees and Costs

In addition to injunctive and declaratory relief, InfoCision seeks attorney's fees and costs. "[A]s a general rule, we have said that a claim of entitlement to attorney's fees does not preserve a moot cause of action although the expiration of the underlying cause of action does not [necessarily] moot a controversy over attorney's fees already incurred." *Fleming v. Gutierrez*, 785 F.3d 442, 448 (10th Cir. 2015) (emphasis omitted) (internal quotation marks omitted). While this means "that a plaintiff may still recover

(and a defendant may still contest) fees even when the merits have been rendered moot," it "does not mean that an otherwise moot issue is revived whenever a prevailing party requests or might request fees." *Citizens for Responsible Gov't State Pol. Action Comm. v. Davidson*, 236 F.3d 1174, 1183 (10th Cir. 2000).

### d.    Exceptions to Mootness

Having concluded that this matter is moot, we must consider whether any exceptions to mootness apply in this case. Although InfoCision argues that both the collateral consequences and the capable of repetition yet evading review exceptions apply, we conclude they do not.

### i.    Collateral Consequences

InfoCision argues the district court's finding that the as applied challenge is moot for lack of collateral consequence is "tenuous." Appellant's Supp. Br. at 4. As InfoCision repeatedly emphasizes, the *possibility* of collateral consequences is enough to trigger this exception. However, upon review of each of the alleged collateral consequences of the Secretary's denial, we conclude InfoCision has not carried its burden. *See Kan. Jud. Rev.*, 562 F.3d at 1248.

InfoCision primarily asserts that it "remains under threat of a collateral denial by Mississippi" and the district court "failed to account" for the testimony of Tanya Webber, Assistant Secretary of State for the Charities Division in Mississippi. Appellant's Supp. Br. at 4. But the fact that InfoCision disagrees with the district court's factual finding does not render that finding clearly erroneous, and the district court's order reflects that it conducted a "closer examination of [Ms.] Webber's deposition testimony" and concluded

20

that, "[w]hen presented with the proper context," the testimony showed "the Secretary's past denial of InfoCision's registration does not prevent it from registering now as a paid solicitor in Mississippi." District Court Order at 11–12. For example, the court relied upon Ms. Webber's testimony that "[i]f [an applicant is] registered in Colorado, then Mississippi will allow it to register in its state also." *Id.* at 12. Based on Ms. Webber's testimony, the district court found "that Mississippi examines the applicant's current registration status in other jurisdictions to determine whether Mississippi will allow it to register there." *Id.* The district court's factual finding is not one that leaves us "with the definite and firm conviction that a mistake has been committed." *Rio Grande Silvery Minnow (Hybognathus amarus)*, 599 F.3d at 1175 (internal quotation marks omitted). Thus, InfoCision has not demonstrated that it will suffer the collateral consequence of a registration denial in Mississippi.

In addition, InfoCision alleges it "faces the possibility of suspension, revocation, or denial in more than 30 other states," Appellant's Supp. Br. at 4, and argues that "other states will require disclosure of the denial of any charitable solicitation license in any other state, and some may require denial of a pending license based on Colorado's denial and/or application of the ban in this case," *id.* at 6 (emphasis omitted). In support of this argument, InfoCision relies on statutes in Mississippi, Florida, and New Jersey. But as has been addressed, the district court did not clearly err in finding that Mississippi will not deny InfoCision's registration based on the Colorado denial. Further, the language in the Florida and New Jersey statutes upon which InfoCision relies does not reflect that

21

either state is required to deny InfoCision's registration based on the Colorado denial.[5] As the district court noted, "InfoCision has not presented evidence that another state is considering revoking or denying its registration based on Colorado's previous denial of its registration." District Court Order at 12. Thus, InfoCision's assertion that it will face collateral consequences in other states is pure speculation.

For the foregoing reasons, InfoCision has not carried its burden and demonstrated that the collateral consequences exception to mootness applies here.[6]

### ii.    Capable of Repetition Yet Evading Review

In addition, InfoCision argues that the capable of repetition yet evading review exception to mootness applies. As the party asserting this exception to mootness, InfoCision "bears the burden of establishing *both* elements of this two-prong test." *Jordan*, 654 F.3d at 1035. We conclude InfoCision has not carried its burden.

---

[5] In Florida, "[t]he department *may deny or revoke* the registration of a professional solicitor if the professional solicitor, or any of its officers, directors, trustees, or agents, has had the right to solicit contributions revoked in any state or has been ordered by a court or governmental agency to cease soliciting contributions within any state." Fla. Stat. § 496.410(15) (emphasis added). Similarly, in New Jersey, "[a]fter notice and an opportunity for a hearing, the Attorney General *may revoke, or suspend* any registration upon a finding that the registrant . . . [h]as had the authority to engage in charitable activities denied, revoked or suspended by New Jersey or any other state or jurisdiction." N.J. Stat. § 45:17A-33(b)(5) (emphasis added).

[6] InfoCision also asserts it will suffer the collateral consequence "of having the district court's decision affirming the Secretary's actions and the constitutionality of the Act be the last word on an important constitutional issue that will continue to have detrimental effects on InfoCision and its freedom of speech." Appellant's Supp. Br. at 6. We address any consequences stemming from the district court's orders, rather than the Secretary's denial, in the context of InfoCision's request that we vacate those orders, *infra*.

First, InfoCision has not demonstrated that "the challenged action is in its duration too short to be fully litigated prior to cessation or expiration." *Brown*, 822 F.3d at 1166 (quotation marks omitted). InfoCision argues that this case cannot be litigated in three years, relying on the fact that this case has taken longer than three years. But as the Secretary points out, InfoCision has cited to no authority supporting its argument that three years is short enough to trigger this exception. In addition, the challenged statute imposes a five-year ban, rather than a three-year ban. Colo. Rev. Stat. § 6-16-104.6(10). Although InfoCision only had three years to litigate its claims in this particular case, InfoCision "provides absolutely no evidence from which we might infer that this sort of allegedly unconstitutional behavior is *necessarily* of short duration." *Jordan*, 654 F.3d at 1036. InfoCision had only three years because the Secretary initially denied InfoCision's 2018 registration, withdrew that denial and chose not to enforce the ban, and then denied InfoCision's 2019 registration before issuing a final decision in January 2020. But as the Secretary points out, InfoCision provides no support for the contention that the Secretary intentionally delayed, or will in the future intentionally delay, InfoCision's registration in order to evade review. Thus, InfoCision has not demonstrated that it would face the same timing limitation if it were to be denied under the challenged provisions in the future.

Similarly, InfoCision has not carried its burden under the second prong, which requires showing "there is a reasonable expectation that the same complaining party will be subject to the same action again." *Brown*, 822 F.3d at 1166 (quotation marks omitted). For all the reasons articulated above, InfoCision has provided no evidence to suggest that

it will again be denied registration in Colorado based on Colo. Rev. Stat. § 6-16-104.6(10).

For the foregoing reasons, the Secretary has carried her burden and demonstrated that InfoCision's facial and as applied challenges to the Act are moot. InfoCision has not carried its burden and demonstrated that any exception to mootness should apply. We therefore conclude that this matter is moot.

### B.    Vacatur

Because we hold that this matter is moot, we vacate the district court's Order on Cross Motions for Summary Judgment and its Order Denying Plaintiff's Opposed Motion to Alter or Amend the Court's Judgment. Although InfoCision requests that we also vacate the Secretary's denial of InfoCision's registration, we decline to do so.

### 1.    Vacatur of the District Court's Orders

The decision to vacate a lower court's decision when a case is mooted on appeal turns on "the conditions and circumstances of the particular case." *Azar v. Garza*, 584 U.S. 726, 729 (2018) (quoting *United States v. Hamburg–Amerikanische Packetfahrt– Actien Gesellschaft*, 239 U.S. 466, 478 (1916)). Our precedent reflects that the conditions and circumstances of a case warrant such vacatur "[w]hen causes beyond the appellant's control make a case moot pending appeal." *In re Otasco, Inc.*, 18 F.3d 841, 843 (10th Cir. 1994). This is because "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *Wyoming v. U.S. Dep't of Agr.*, 414 F.3d 1207, 1213 (10th Cir. 2005) (quoting *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship.*, 513 U.S. 18, 25 (1994)). Thus,

"[w]hen a case becomes moot pending appeal, the general practice is to vacate the judgment below and remand with directions to dismiss," unless "mootness is a result of a voluntary act of a nonprevailing party." *Id.*; *see Great Divide Wind Farm 2 LLC v. Aguilar*, No. 19-2214, 2021 WL 2690477, at *3 (10th Cir. Mar. 30, 2021) (unpublished)[7] ("This practice is particularly appropriate when, as here, the party seeking appellate relief is not the party responsible for mooting the case." (internal quotation marks omitted)).

In this case, neither party asserts that InfoCision is responsible for the mootness of this appeal. InfoCision argues that the Secretary is responsible, while the Secretary claims that the expiration of the Act's five-year ban, and the resulting requirement that the Secretary grant InfoCision's renewal application, mooted the case. Indeed, there is no reason to believe that InfoCision's voluntary action caused the five-year ban period to expire before InfoCision had the opportunity to pursue this appeal. Thus, in line with our general practice, we vacate the district court's orders below.

**2.      Vacatur of the Secretary's Denial**

InfoCision also asserts we should vacate the Secretary's denial of InfoCision's registration. Although InfoCision invokes our general practice of vacating district court orders when a case becomes moot pending appeal, InfoCision has not identified any Tenth Circuit precedent indicating that this general practice also applies to state administrative actions, such as the Secretary's denial. Further, while InfoCision asserts

---

[7] We cite unpublished cases for their persuasive value only and do not treat them as binding authority. *See United States v. Ellis*, 23 F.4th 1228, 1238 n.6 (10th Cir. 2022).

the capable of repetition yet evading review and collateral consequences doctrines both support vacatur of the Secretary's denial, InfoCision has not established that either of those doctrines should apply in this case. Thus, we identify no compelling reason to conclude that InfoCision is entitled to the equitable remedy of vacatur of the Secretary's denial.

## III.    CONCLUSION

We agree with the district court's conclusion that this matter is now moot. Accordingly, we DISMISS this appeal as moot, REMAND the mooted claims to the district court for dismissal without prejudice, and VACATE the district court's Order on Cross Motions for Summary Judgment and its Order Denying Plaintiff's Opposed Motion to Alter or Amend the Court's Judgment. We decline to vacate the Secretary's denial of InfoCision's registration.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

22-1264, *InfoCision v. Griswold*
**HARTZ**, J., dissenting in part

I am pleased to join the panel decision except for § II.B.2. In my view, we should also vacate the Secretary's denial of InfoCision's registration. As the opinion notes, other States will require disclosure of that denial. I cannot think of any reason why such disclosure is required unless it could have a negative impact on license applicants. It seems unfair to me to keep that negative decision on the licensee's record when the licensee, through no fault of its own, has no opportunity to challenge the validity of the denial. When a court challenge to a decision by a federal administrative agency has become moot on appeal, the regular practice of the United States Supreme Court has been to order the agency to vacate and set aside its decision. *See A. L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 331 (1961); *Valspar Sourcing, Inc. v. PPG Indus., Inc.*, 780 Fed. App'x. 917, 921 (Fed. Cir. 2019) (collecting cases). I see no reason why the same practice should not apply to state administrative agencies that have been properly brought into federal court on a challenge to the agency action. After all, if the case had not been mooted, we would certainly have had full authority to order the state agency to vacate its order.